## IMPERFECTLY EXECUTED DEED HELD ENFORCIBLE.

Circuit Court of Cuyahoga County.

JOSEPH UEBBING v. MARTIN KOESTER, TRUSTEE, ET AL.*

Decided, June 1, 1908.

*Trusts—Improperly Executed Quit-Claim Deed—Absolute in Form but Admitted by All to Have Been in Trust—Will Made for Purpose of Carrying Out Agreement—Testatrix Dies and Action Brought to Enforce the Trust.*

In furtherance of an effort by a mother to make an equitable distribution of her estate among her children, an improperly attested quitclaim deed, made under an agreement wherein the children all joined for the purpose of carrying out the distribution undertaken by the mother and upon which a parol trust was limited, may be perfected and enforced in accordance with the agreement.

*Hamilton & Smith,* for plaintiff.
*Dawley & Meals* and *L. I. Litzler,* contra.

---

* Affirmed without opinion, *Uebbing, Trustee,* v. *Koester, Trustee, et al,* 81 Ohio State, 564.

HENRY, J.; MARVIN, J., and WINCH, J., concur.

Appeal by Martin Koester.

This appeal presents the question of the enforceability of an alleged trust relative to a family arrangement of property interests, and the case is before us on exceptions to the report of the master heretofore appointed by this court. The evidence reported by the master shows the facts to be as follows:

Alida Bauman was survived by her third husband and by one child of her first marriage; six by her second and three by her third marriage. There were four parcels of land, valued at $11,900, of which she owned one, she and her third husband jointly another, and the remaining two parcels were owed in common by her and the six children of her second marriage, who, however, allowed her to possess all the property as long as she lived. In her last sickness she employed an attorney to devise and carry out a plan by which all her children should share all the property equally after her death, save that her third husband should have the life use of one-third, and two of the children by her second marriage should each have $200 more than the others. The plan adopted was awkwardly conceived and imperfectly executed. She and all the children together with their husbands and wives became parties to a quit-claim deed of all the property, wherein two of her sons, one by the first marriage and one by the second marriage, were the grantees. This deed, though absolute in form, is admitted by all concerned to have been made in trust. It is, moreover, though perfect in form, admittedly defective in fact, because one of the two signatures purporting to be those of witnesses was written by one who was not actually a witness to its execution. The terms of the intended trust are in dispute, and the master who took the testimony reports that he is unable to find whether any, and if any, what trusts were declared at that time. Some of the children, including one of the trustees, assert that the trust was created simply to hold the property during the mother's life and to facilitate its disposition and the distribution of proceeds after her death according to the legal rights of the parties. The other trustee and the other children say that it was not only for

these purposes, but also to carry out their mother's wish as above described and as embodied in a will exhibited and explained in advance to all parties to the deed and subsequently executed by her. The will purports to devise to her husband and children in this manner all of her property, which, as the will declares, is all "included" in the deed to her two sons as trustees.

It will be observed that if the deed were good, the testator had no property left to devise. The will in that case could at most amount to nothing but an exercise of her power to appoint the stipulated trusts upon which the deed was given. That power of appointment rested in parol if it was conferred upon her at all. We think, contrary to the master's conclusion, that such power was at least intended and agreed to be so conferred upon her.

But the deed, being defective, conveyed no legal estate to the trustees. Can this imperfectly executed deed of conveyance whereon this parol trust was limited, be perfected and enforced as a conveyance in trust for the uses intended?

The six children of the second marriage had already acquired title in their own right to nearly one-half of the entire property. If, in addition thereto, they can acquire under their mother's will, as her heirs at law, their distributive shares of the other half which she owned, they will fare much better than the children of her first and third marriages. She might have so devised her property, having regard to what each of the children already had, as to bring about the desired equality among them without the intervention of any trust. Shall her manifest intention be defeated merely because the means actually employed by her, under the advice of counsel, were not only awkwardly adapted but imperfectly executed for the accomplishment of the purpose which she had in view? She died supposing undoubtedly that the accomplishment of that purpose was assured. Had she been apprised of the improper attestation of the deed and properly advised in the premises, she could, and no doubt would, have so altered her will as to make the accomplishment of her purposes sure. Her will was made by her in pursuance of an

agreement with her children, and the consideration moving to her in that agreement was the expected attainment of her object, namely, the equal distribution among them all of the entire property, theirs and hers alike. That will is now made irrevocable by her death and it has become effective by reason of its subsequent admission to probate. If it should turn out that it disposes only of the property which was hers, it creates inequality instead of the equality which she intended and which she supposed was accomplished. The consideration supporting the agreement in obedience to which the will was executed would thereby fail, for the object which she expected to gain would be lost. To overturn the trust and uphold the will would be to defraud the testatrix. We have, of course, no jurisdiction over the will or the disposition which it makes of her property, except to consider its effect in connection with the entire transaction.

The question was put from the bench on the hearing, whether the will should not be construed and administered to effect such a disposition of the testatrix's own property as to make, together with the other property which is contemplated by its provisions and which some of the children already owned, an equal apportionment of the aggregate property among them all. If that be accomplished, it is quite immaterial whether the trust shall be upheld or not. But we do not assume to answer the question thus raised. Neither can we assume the will to be a testamentary disposition of the mother's property in exactly the same manner as the law would distribute it, had she died intestate, so that if the trust fails the parties will be left in precisely the status which they would have occupied if neither deed nor will had been made. The will's provisions deviate in some degree at least from those of our statutes of descent and distribution. The distribution effected by the will, however construed, is essentially a testamentary distribution and not the mere equivalent of intestacy or non-action on her part.

We hold, therefore, that the agreement between the mother and her children to put all their property in trust, for the purpose already described, was made upon consideration executed by her when she made her will.

Equity therefore requires that the trust thus supported by an executed consideration, be perfected according to the agreement, and that as so perfected, it be enforced.

A decree may be taken sustaining the exceptions to the master's report in the particulars indicated, and defining and enforcing the trust in accordance with this opinion.